## MILLER *v.* COURTNAY.

ERROR TO THE CIRCUIT COURT OF THE UNITED STATES FOR THE DISTRICT OF NEBRASKA.

No. 157. Submitted December 11, 1893. — Decided March 5, 1894.

In an action of ejectment, in a Federal court, the legal title prevails.

The legal title to the premises in dispute passed to the grantor of the defendant by sale under execution and the sheriff's deed, and was not diverted by the subsequent decree set forth in the statement of facts.

THIS was an action of ejectment commenced by Jason G. Miller in the Circuit Court of the United States for the District of Nebraska, on February 21, 1887, to recover of the defendant the possession of certain real estate situate in an addition to the city of Lincoln, in that State. After answer and reply, the case on November 15, 1887, came on for trial before a jury, which returned a special verdict finding the facts. Upon such special verdict judgment was, on motion, entered in favor of the defendant. The plaintiff thereupon sued out a writ of error from this court. Since the filing of the record Jason G. Miller has died, and the action been revived in the name of Mary P. Miller, his devisee.

The testimony given on the trial was not preserved by any bill of exceptions, and the questions which arise are upon the sufficiency of the facts found to sustain the judgment. It appears from these findings that on August 21, 1867, the title to the land passed to Luke Lavender, the common source of title of plaintiff and defendant. On November 4, 1873, Henry Atkins obtained a judgment against Luke Lavender in the district court of Lancaster County, the county in which the land is situated. Executions were issued from time to time on this judgment and levied on the property in controversy. Finally, on March 22, 1879, the sheriff sold the property to Martha I. Courtnay, wife of the defendant. This sale was confirmed by the court and the sheriff's deed duly executed. Lavender was personally served with process, and the proceedings from the commencement of the action to the execution of the sheriff's deed were regular in form. The title thus acquired she subsequently conveyed to the defendant, though not till after the commencement of the present action. On April 17, 1884, Lavender filed his petition in the same court against Henry Atkins, Martha I. Courtnay, and D. G. Courtnay, this defendant, in which he alleged his ownership, in 1873, of the property in controversy, as well as other real estate, the rendition of several judgments against him during the years 1873 and 1874, among others that in favor of Atkins; that the property then belonging to him was worth $75,000 over and above any homestead exemption; that all the judgments

against him amounted in the aggregate to less than $10,000; that, notwithstanding this, through the wrongful conduct of said Atkins, John S. Gregory, the defendant in this case, (who was a son-in-law of said Atkins,) and James E. Philpott, who was acting as his (Lavender's) attorney, his entire property was sold on executions issued on these judgments, and still leaving a balance unsatisfied. The various steps by which this result was accomplished, such as having irresponsible parties present at the sales and bidding on the property offered far above its real value, and thus preventing sales to *bona fide* bidders, circulating reports as to incumbrances upon the property, inducing the plaintiff Lavender to file a voluntary petition in bankruptcy in the United States District Court, and then to abandon it, are all stated at length in the petition. The prayer was that the sales made on the judgments owned or controlled by Atkins, Courtnay, or Gregory be set aside; that an account be stated of the amounts due under such judgments, and that plaintiff be allowed time in which to pay such amounts, or in lieu thereof that new executions and sales be ordered.

The defendants appeared and answered, and on November 5, 1885, a decree was entered finding the issues as to this land in favor of the plaintiff, the language of the finding and decree being as follows:

" That the plaintiff is entitled to redeem the same and to be restored to the possession thereof upon the payment within six months next ensuing of the sum of two hundred and thirty-four dollars, with interest thereon at the rate of seven per centum per annum from March 22, 1879, until the same is paid into court for said defendants; to which defendants except. It is therefore ordered, adjudged, and decreed that upon the payment by the plaintiff of said sum into court for the defendants within the time aforesaid, the sheriff's sale of March 22, 1879, and deed to said lands, to wit, the southwest quarter of the northwest quarter of the northeast quarter of section twenty-five, township ten north, of range six east, in Lancaster County, Nebraska, be set aside, annulled, and held for naught, and the title to said lands be quieted in the plaintiff as against all claims or title that said defendants or either of

them and all persons holding or claiming to hold under them or either of them may have or claim to have under and by virtue of said sale and deed, and that the defendants and each of them convey to plaintiff all right, title, and interest by them or either of them held or claimed in and to said lands by virtue of said sale and deed, and that plaintiff have possession of said lands and execution therefor, and that in default of the plaintiff making such payment within the time aforesaid it is ordered, adjudged, and decreed that the title in and to the said lands, to wit, the southwest quarter ($\frac{1}{4}$) of the northwest quarter of the northeast quarter of section twenty-five, township ten, range six east, in Lancaster County, Nebraska, be quieted in the defendant, Martha I. Courtnay; to which defendants except. This decree, however, is not to affect any judgment or execution lien or liens which said defendants or either of them may have or hold on said lands; and plaintiff excepts thereto and prays an appeal therefrom, which is allowed; and the court further finds as to the rest and residue of said lands in the petition described the issues joined in favor of the defendants and against the plaintiff; and it is further ordered and decreed that the title in and to all the rest and residue of said lands in the petition described be quieted in the defendants."

Subsequently this stipulation was filed:

"This cause is settled and the judgment and decree rendered in the District Court of Lancaster County is in all things affirmed, and all errors are waived by the plaintiff, and the said plaintiff waives that part of the decree in this case which gives said plaintiff the right to redeem certain parts of said premises mentioned in said decree, and the said Luke Lavender and wife deed all of said premises mentioned in the said decree to D. G. Courtnay, and defendants herein agree to pay all the costs, and judgment is rendered for the same in favor of the plaintiff.

"D. G. COURTNAY,
"*Att'y for Def'ts.*
"LUKE LAVENDER.

"This 18th day of December, 1885."

And on the 28th of December, 1885, the decree was modified in accordance therewith.  On the day of the signing of this stipulation Lavender and wife executed and delivered to the defendant a warranty deed which included, with other real estate, the premises in controversy.  Further findings were as follows:

"That the consideration received by the said Luke Lavender and paid and given by the said Dominic G. Courtnay for the settlement of the said suit under the said stipulation and the delivery of the said deed of conveyance to him by the said Luke Lavender and Julia A. Lavender, his wife, as above found, was the sum of five hundred dollars, cash paid to Lavender by said Courtnay, and the discharge and release by said Courtnay and Martha I. Courtnay and Henry Atkins of all the judgments held by them or any of them against the said Luke Lavender, amounting in the aggregate to about the sum of fourteen thousand dollars."

"And we further find and say that Luke Lavender did not pay within six months next accruing of the said decree the sum of $234, with interest thereon, at the rate of 7% per annum, from March 22, 1879, neither did any person pay or offer to pay the same, and no sum of money whatever has ever been paid as required by the terms of said decree."

It also appears that, on February 21, 1883, Lavender and his wife by two deeds quit-claimed the premises to the plaintiff, the granting clause in each reading as follows :

"Have remised, released, and quit-claimed, and by these presents, do for themselves, their heirs, executors, and administrators remise, release, and forever quit-claim and convey unto the said party of the second part and to his heirs and assigns forever all their right, title, interest, estate, claim, and demand, both at law and in equity," etc.

*Mr. Walter J. Lamb, Mr. A. C. Ricketts,* and *Mr. Henry H. Wilson* for plaintiff in error.

*Mr. D. G. Courtnay* in person for defendant in error.

MR. JUSTICE BREWER delivered the opinion of the court.

This was an action of ejectment, and in such an action in a Federal court the legal title prevails.  As the proceedings in the action in the Lancaster County District Court, from the service of the summons upon Luke Lavender to the confirmation of the sale to Martha I. Courtnay and the execution of the sheriff's deed, were confessedly regular in form, the legal title passed thereby to her.  If it be true, as claimed by plaintiff's counsel, that the quit-claim deeds to Miller in 1883 conveyed " every equitable and legal right held by Lavender in this land at the time," it is difficult to perceive how Lavender, in 1884, could maintain any suit to set aside such sale and deed.  But, beyond this, there was nothing in the proceedings, including the decree in the case of Lavender against Atkins, Martha I. Courtnay, and this defendant, which ever, even for a single moment, operated to transfer the legal title back from Mrs. Courtnay to Lavender.  The petition in that case admitted the regularity of the proceedings in the prior action as to matter of form, did not question the fact that the legal title had thereby passed to her, and only insisted on the equitable right to redeem by virtue of the alleged misconduct.  The decree gave a right to redeem, but provided that if no redemption was made the title of Mrs. Courtnay should be quieted. The conditions of redemption prescribed in the decree were never performed, and under an agreement involving other matters, and upon a consideration paid by a party other than the then owner, Mrs. Courtnay, the decree was, by consent of the parties, modified, and even the conditional right to redeem denied.  Surely it needs no argument to show that the legal title, once vested in Mrs. Courtnay, is not shifted backwards and forwards by the changing terms of a decree which gave and then denied the right to redeem.

It is unnecessary to go into any further consideration of this case.  The legal title which passed to Mrs. Courtnay by the said sale and sheriff's deed was not divested by the subsequent decree, or any action taken thereunder, and the plaintiff never acquired the legal title by his quit-claim deeds.  The judgment is

*Affirmed.*